IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

KUTMAN SABIROV,

Petitioner,

vs.

DAVID EASTERWOOD, Acting Director, St.
Paul Field Office Director for U.S. Immigration
and Customs Enforcement; ACTING
DIRECTOR TODD M. LYONS, Acting
Director, Immigration and Customs
Enforcement; SECRETARY MARKWAYNE
MULLIN, Secretary of the Department of
Homeland Security; TODD BLANCHE, Acting
Attorney General, United States Department of
Justice; and MCCOOK DETENTION CENTER
WARDEN, McCook Detention Center;

Respondents.

7:26CV5010

MEMORANDUM AND ORDER

This matter is before the Court on Petitioner Kutman Sabirov's amended petition for a writ of habeas corpus. (Filing No. 19). Sabirov, a noncitizen detained by U.S. Immigration and Customs Enforcement, challenges the constitutionality of the bond hearing procedure under 8 U.S.C. § 1226(a) and its accompanying regulations. For the reasons set forth below, Sabirov's petition will be denied.

**BACKGROUND**

Sabirov is a Kyrgyzstani national and citizen. (Filing No. 19 at 1). He entered the United States in July 2023 on an M-1 vocational student visa that he says authorized him to remain in the country through July 2, 2024. (Filing No. 19 at 3). In January 2024, Sabirov applied for asylum, asserting "a well-founded fear of persecution in Kyrgyzstan on account of political opinion,

religious beliefs, and membership in a particular social group." (Filing No. 19 at 4). Sabirov also eventually received employment authorization documents while his asylum application was pending. (Filing No. 19 at 4).

In February 2026, U.S. Immigration and Customs Enforcement (ICE) "encountered" Sabirov on Interstate 80 near Waverly, Nebraska. (Filing No. 19 at 4). ICE arrested him on the grounds that he overstayed his visa.[1] (Filing No. 15 at 4). ICE detained Sabirov and initiated removal proceedings against him. (Filing No. 15 at 4; Filing No. 15-1). After being initially held at the Cass County Jail in Plattsmouth, Nebraska, ICE transferred Sabirov to the Adams County Correctional Center in Natchez, Mississippi and then to the McCook Detention Center in McCook, Nebraska, where he remains. (Filing No. 19 at 6).

Sabirov sought release on bond during the pendency of his removal proceedings. (Filing No. 19 at 5). The immigration judge held a bond hearing under 8 U.S.C. § 1226(a) in March 2026. (Filing No. 15 at 4). The hearing ran "approximately 19 minutes" and both Sabirov and the government presented evidence and argument in support of his request to be released on bond. (Filing No. 15 at 4). The immigration judge was not persuaded and denied Sabirov's request, pointing to "[f]light [r]isk concerns, [l]imited relief, limited time in the US, etc." in a short, written order. (Filing No. 15-3 at 1). Sabirov did not seek review of that decision with the Board of Immigration Appeals. (Filing No. 19 at 6).

Instead, Sabirov seeks a writ of habeas corpus from this Court. (Filing No. 19). He argues his bond hearing—where he bore the burden of proving he was not a flight risk or a danger to others—was constitutionally deficient. *See In Re Guerra,* 24 I. & N. Dec. 37 (BIA 2006) (holding "[t]he burden is on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond."). Specifically, he alleges "due process requires the Government to bear the burden of proving flight risk or dangerousness at a § 1226(a) bond hearing[.]" (Filing No. 19 at 2). Sabirov seeks immediate release or, in the alternative, an order directing the Respondents to

---

[1] For his part, Sabirov disputes that he overstayed his visa. Without citing any authority, he argues "his continued presence was lawfully maintained while [his asylum application] remained pending" because he filed it "before expiration of his authorized period of admission[.]" (Filing No. 19 at 4).

2

provide him another bond hearing where the government would bear the burden of proving danger or flight risk. (Filing No. 19 at 20).

The Court directed Sabirov to serve his petition on Respondents (Filing No. 3) and ordered Respondents to file a return on the petition within three business days of service to show cause why the petition should not be granted. The Federal Respondents[2] did so (Filing No. 13) and separately moved to dismiss Sabirov's petition on the grounds that his now-immediate physical custodian—the Warden of McCook Detention Center—was not named as a respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). Sabirov argued, and the Court agreed, that any jurisdictional defects could be cured, 28 U.S.C. § 2242, so it denied the Federal Respondents' motion to dismiss and directed Sabirov to name and effect service on the Warden with an amended petition. (Filing No. 18). Sabirov did so (Filing No. 19) and replied in support of his petition (Filing No. 17). The parties advised the Court that a hearing is not necessary. Therefore, the Court considers the matter submitted on the parties' written arguments. *See* 28 U.S.C. § 2243.

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under 28 U.S.C. § 2241, a district court can grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Sabirov bears the burden to show that he is in custody in violation of the law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

The Federal Respondents argue he cannot make that showing. At the threshold, they note that Sabirov cannot seek review of the immigration judge's decision to deny him release on bond before this Court. (Filing No. 16 at 8). As a purely legal matter, they are correct. 8 U.S.C. § 1226(e)

---

[2] The Federal Respondents include all but the Warden of the McCook Detention Center. The Warden filed a separate response taking no position "on the substantive issues raised in the Petition" or whether "Petitioner's writ should or should not be granted." (Filing No. 21 at 2).

provides that "[t]he Attorney General's discretionary judgment regarding the application of [§ 1226] *shall not be subject to review*." *Id.* (emphasis added). If that were not enough, the statute continues: "No court may set aside any action or decision by the Attorney General under [§ 1226] regarding the detention of any alien or the revocation or denial of bond or parole." *Id.* Consequently, the Court "does not review the immigration judge's decision de novo, or even for an abuse of discretion—this Court doesn't review the immigration judge's decision *at all*." *Gvritishvili v. Mullin*, 2026 WL 1362439, at *1 (D. Neb. May 15, 2026) (emphasis in original).

Parts of Sabirov's amended petition do seem to invite review of the immigration judge's decision. He assails the immigration judge's order for failing to make "individualized factual findings," cite any evidence, or apply a legal standard, for example. (Filing No. 19 at 9). He also suggests "the record before the Immigration Judge overwhelmingly establishes [his] eligibility for release[.]" (Filing No. 19 at 16). But as the Federal Respondents seem to acknowledge, the thrust of his amended petition is a challenge to "the statutory framework" governing bond hearing procedures "as a whole" rather than the immigration judge's particular decision to deny him release. *Jennings v. Rodriguez*, 583 U.S. 281, 295-96 (2018) (citation modified). Those kinds of claims "fall[ ] outside of the scope of § 1226(e)." *Id.* at 296; *see Demore v. Kim*, 538 U.S. 510, 517 (2003) ("Section 1226(e) likewise deals with challenges to operational decisions, rather than to the legislation establishing the framework for those decisions . . . Section 1226(e) contains no explicit provision barring habeas review[.]") (citation omitted). Thus, while the Court cannot review the immigration judge's decision itself, § 1226(e) does not bar this Court's review of Sabirov's constitutional claims.

The Court therefore proceeds to the heart of Sabirov's petition—whether due process requires the government to bear the burden of proving flight risk and danger at a bond hearing pursuant to 8 U.S.C. § 1226(a) and its accompanying regulations.

Some background on the § 1226(a) bond hearing procedure is in order at the outset. Under that provision, the Attorney General may issue a warrant for the arrest and detention of a noncitizen "pending a decision on whether the alien is to be removed from the United States." *Jennings v.*

4

*Rodriguez*, 583 U.S. 281, 288 (2018) (quoting § 1226(a)). "Except as provided in subsection (c)[3] of this section," the Attorney General "may release" a noncitizen detained under § 1226(a) "on . . . bond" or "conditional parole." *Id.*

Per § 1226(a)'s implementing regulations, an ICE officer makes the threshold decision as to whether a noncitizen detained under that statute should be released. *See* 8 C.F.R. § 236.1(c)(8). To be released, the noncitizen "must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* If the officer opts for continued detention, the noncitizen can seek review of that decision at a bond hearing before an immigration judge. *Id.* § 236.1(d)(1). An immigration judge's decision to continue detaining a noncitizen may be further appealed to the Board of Immigration Appeals. *Id.* § 236.1(d)(3).

Neither Section 1226(a) or its corresponding regulations, however, delineate what burden of proof applies at a bond hearing before an immigration judge or who bears that burden. The Board of Immigration Appeals has adopted the rule from § 236.1(c)(8) in bond hearings. *See Matter of Adeniji*, 22 I. & N. Dec. 1102, 1112 (B.I.A. 1999); *Matter of Guerra*, 24 I.& N. Dec. at 38. Thus, a noncitizen detained under section 1226(a) must demonstrate "to the satisfaction of the Immigration Judge that he or she merits release on bond," *Matter of Guerra*, 24 I. & N. Dec. at 40, "even though section [1226(a)] does not explicitly contain such a requirement." *Matter of Adeniji*, 22 I. & N. Dec. at 1113. To do that, the noncitizen must show they are neither a danger to the community nor a flight risk. *See, e.g., Matter of Siniauskas*, 27 I & N Dec. 207, 207 (B.I.A. 2018). A noncitizen detained under § 1226(a) who is denied release by an immigration judge may also request an additional bond hearing whenever they experience a material change in circumstances. *See* 8 C.F.R. § 1003.19(e). The same procedures apply to this new hearing, and its outcome can also be appealed to the BIA. *See generally id.* § 1003.19.

In *Jennings,* the Supreme Court rejected the notion that § 1226(a) requires "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." 583 U.S. at 305. But the *Jennings* court

---

[3] Section 1226(c)—not at issue here—"carves out a statutory category of aliens who may not be released under § 1226(a)," namely those who fall "into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings,* 583 U.S. at 289.

5

did not reach the *constitutional* issue Sabirov raises here: whether the Due Process clause of the Fifth Amendment entitles a noncitizen detained pursuant to section 1226(a) to a bond hearing at which the government bears the burden of proving by clear and convincing evidence that the noncitizen is dangerous or a flight risk. *Id.* at 312.

As both parties point out, the courts of appeal who have considered that issue are divided. *See Black v. Almodovar*, 156 F.4th 171, 174 (2d Cir. 2025) (Nardini, J., dissenting from denial of rehearing en banc) (describing the "disjointed body of case law" in this area) (collecting cases). The Third, Fourth, and Ninth Circuits have held that due process does not require shifting the burden from the noncitizen to the government in a § 1226(a) bond hearing. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274 (3d Cir. 2018) ("perceive[ing] no problem" with the noncitizen bearing the burden of proof under § 1226(a)); *Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022) (holding that "the current procedures used for detention under § 1226(a) satisfy due process"); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1212 (9th Cir. 2022) ("Nothing in this record suggests that placing the burden of proof on the government was constitutionally necessary . . .").

On the other side are the First and Second Circuits. Those courts have both held that the Due Process Clause entitles § 1226(a) detainees to an additional bond hearing where the government bears the burden of proof after prolonged periods of detention.[4] But "the facts on which those courts reached their conclusions differed, as do their holdings regarding the procedures the agency must follow in these hearings." *Rodriguez Diaz,* 53 F.4th at 1203-04.

In *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021), a noncitizen brought a habeas petition after being detained under § 1226(a). *Id.* at 24. The noncitizen received a bond hearing at the outset of her detention but was denied release. *Id.* Around ten months into her detention, she sought habeas relief. *Id.* at 25. Applying the factors from *Mathews v. Eldridge*, 424 U.S. 319, 335, (1976), the First Circuit concluded that to "continue detaining [the noncitizen] under section 1226(a), due process requires the government to either (1) prove by clear and convincing evidence

---

[4] As set forth more fully below, Sabirov concedes his detention has not become prolonged here, making this case distinguishable from those he relies on.

that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." *Id.* at 41; *see also id.* at 30, 39-41.

The Second Circuit found § 1226(a)'s procedures unconstitutional as applied to the noncitizen in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020). Applying the *Mathews* factors similarly to the First Circuit, the Second Circuit held that the noncitizen's "prolonged incarceration, which had continued for fifteen months without an end in sight or a determination that he was a danger or flight risk, violated due process" and that the proper remedy was "a new hearing at which the Government was called upon to justify continued detention." *Id.* at 855. The Second Circuit declined to "establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden" but noted that "[o]n any calculus," fifteen months was too long. *Id.* at 855 n.13.

For its part, the Eighth Circuit has not squarely addressed these issues. In *Ali v. Brott*, 770 F. App'x 298 (8th Cir. 2019), however, the court cast doubt on a noncitizen's "argument that his detention pending a decision on whether he is to be removed under § 1226(a) is unconstitutional considering he was given a bond hearing and still has available procedural avenues to seek relief." *Id.* at 301. The court noted "[t]he Supreme Court has never indicated the bond hearing process set forth in the statute and accompanying regulations is constitutionally deficient. To the contrary, Supreme Court precedent indicates such a framework is constitutionally permissible." *Id.* (citing *Demore v. Kim*, 538 U.S. 510, 523 (2003); *United States v. Salerno*, 481 U.S. 739, 748, 755 (1987)).

As set forth below, the Court finds the reasoning of the Third, Fourth, and Ninth Circuits most consistent with the principles governing the constitutionality of immigration detention expressed by the Supreme Court and Eighth Circuit.

There is no question that the Fifth Amendment entitles noncitizens to due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). But at the same time, in determining what process noncitizens are due, the Supreme Court has "firmly and repeatedly endorsed the proposition that Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). Thus, the Supreme Court has long "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Id.* at 523.

When considering due process challenges to § 1226(a) like Sabirov's, some courts apply the three-factor *Mathews* test. As the Court has said before, *see, e.g., Sandhu v. Mullin*, 2026 WL 1146643, at *2-*3 (D. Neb. Apr. 28, 2026), it has doubts that *Mathews* is the right test in the immigration context given the Eighth Circuit's decision in *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024). There, the court held that *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001) and *Demore* "leave no room for a multi-factor 'reasonableness' test." 115 F.4th at 933. Instead, the Eighth Circuit reasoned, the Supreme Court "opted for a bright-line rule:" the government may detain a noncitizen "for as long as deportation proceedings are still '*pending*.'" *Id.* (emphasis in original). Further, the *Demore* court did not apply *Mathews* in upholding the mandatory detention statute for noncitizens convicted of certain crimes (8 U.S.C. § 1226(c)) against a due process challenge. Thus, Eighth Circuit-specific authority aside, "it is not clear that *Mathews* even governs in this context" at all. *Hernandez-Lara,* 10 F.4th at 56 n.22 (Lynch, J., dissenting).

Nonetheless, both Sabirov and the Federal Respondents make arguments based on the *Mathews* test here. (Filing No. 19 at 12-13); (Filing No. 16 at 19). The Federal Respondents seem to hedge their reliance on *Mathews* (Filing No. 16 at 19), but they rely on cases that applied its three-factor test. *See, e.g., Rodriguez Diaz*, 53 F.4th at 1206-07; *Miranda,* 34 F.4th at 358-59. Thus, the Court assumes without deciding that *Mathews* governs here. And in any event, Sabirov's claims fail even under the *Mathews* test, which is presumably more favorable to him than any the Federal Respondents would seek to have the Court apply. *Rodriguez Diaz,* 53 F.4th at 1207.

Under *Mathews*, the "identification of the specific dictates of due process generally requires consideration of three distinct factors." 424 U.S. at 334–35. "*First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335 (emphasis added).

The first factor favors Sabirov. His private interest at stake is freedom from detention, a liberty interest which "lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas,* 533 U.S. at 690. "But it is important not to overstate the strength of [Sabirov's] showing under the first *Mathews* factor, either." *Rodriguez Diaz,* 53 F.4th at 1207. In describing his liberty

interest, Sabirov cites cases involving civil commitment like *Addington v. Texas,* 441 U.S. 418 (1979). (Filing No. 19 at 13-14; Filing No. 17 at 13). There, the Supreme Court recognized "the individual's interest in the outcome of a civil commitment proceeding is of such weight and gravity that due process requires the state to justify confinement by proof more substantial than a mere preponderance of the evidence." *Id.* at 427. But *Addington* is different from this case in a significant way—the plaintiff there was a citizen. And "[d]ue process is not a one size fits all proposition." *Miranda,* 34 F.4th at 359. To the contrary, "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). In the immigration context, "the government has *more* flexibility" because Congress may constitutionally "make rules as to aliens that would be unacceptable if applied to citizens." *Banyee,* 115 F.4th at 931 (emphasis added) (citation omitted). One such rule "has been clear for decades: "[d]etention during deportation proceedings [i]s . . . constitutionally valid." *Id.* (quoting *Demore,* 538 U.S. at 523).

Then there are the facts that Sabirov received a bond hearing around one month into his detention and has been detained for around five months (Filing No. 19 at 4). Both bear on his "interests under the first prong of the *Mathews* analysis." *Rodriguez Diaz,* 53 F.4th at 1208. Sabirov's time in detention is less than the "fifteen months" and "ten months" the successful petitioners in *Velasco Lopez* and *Hernandez-Lara* spent in immigration detention, respectively. *See* 978 F.3d at 851; 10 F.4th at 28. The Court does not disagree with the proposition that "[t]he longer the duration of incarceration, the greater the deprivation." *Velasco Lopez,* 978 F.3d at 852. It merely notes that here, the duration of detention is shorter than in cases where courts have found a due process violation. Put differently, the Court cannot say the detention here has become "prolonged" as it was in *Velasco Lopez* and *Hernandez-Lara*. Sabirov himself concedes as much. (Filing No. 17 at 12).

As to the second *Mathews* factor, "the risk of an erroneous deprivation of [Sabirov's liberty interest] through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," the Court concludes the existing agency procedures sufficiently protected Sabirov's liberty interest and mitigated the risk of erroneous deprivation. Pursuant to § 1226(a) and its implementing regulations, Sabirov received the "fundamental features of due process—

9

notice and an opportunity to be heard." *Miranda,* 34 F.4th at 338 (citing *Mathews*, 424 U.S. at 333).

Indeed, § 1226(a) detainees receive four "layers" of process. *See Rodriguez Diaz,* 53 F.4th at 1219 (Bumatay, J., concurring). *First,* when a noncitizen is detained, an ICE officer makes an individualized custody determination. *See* 8 C.F.R. § 236.1(c)(8). That determination involved evaluating Sabirov's likelihood of "appear[ing] for any future proceedings" and potential "danger to property or persons." *Id. Second,* if the ICE officer denies bond, the noncitizen may request a bond redetermination hearing before an immigration judge. *Id.* §§ 236.1(d)(1). *Third,* if the immigration judge denies bond, the noncitizen may appeal that decision to the BIA. *See id.* § 236.1(d)(3). *Fourth,* if those efforts do not result in release, noncitizens may request another bond hearing based on materially changed circumstances "since the prior bond redetermination." *Id.* § 1003.19(e).

Further, practical considerations support allocating the burden of proof to the noncitizen at an initial bond hearing. A noncitizen should have "as much or more" knowledge about "their own criminal history," "any mitigating evidence related to that history," "family or employment information," and the noncitizen's entry into the United States than the government would. *See Miranda*, 34 F.4th at 362. In other words, "[t]here is no reason to believe that, as a general proposition, the government will invariably have more evidence than the alien on most issues bearing on alleged lack of future dangerousness or flight risk." *Rodriguez Diaz*, 53 F.4th at 1212.

Finally, the third *Mathews* factor, "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," favors the Federal Respondents. The government has a "strong interest" in "preventing aliens from "remain[ing] in the United States in violation of our law." *Rodriguez Diaz,* 53 F.4th at 1208 (quoting *Demore,* 538 U.S. at 518). In the specific context of a *Mathews* analysis, the Supreme Court has directed courts to "weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). "Over no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores,* 507 U.S. 292, 305 (1993). And Congress chose to authorize detention pending removal for some noncitizens—like Sabirov—in 8 U.S.C. § 1226(a). Through detention, the government seeks to "increas[e] the

10

chance that, if ordered removed," a noncitizen "will be successfully removed." *Demore,* 538 U.S. at 528; *see also id.* (explaining that, "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means," so it is sufficient if "detention necessarily serves the purpose of preventing deportable aliens from fleeing prior to or during their removal proceedings").

It is true, as the First and Second Circuits have recognized, that the government likely cannot articulate an interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight. *See Hernandez-Lara,* 10 F.4th at 33; *Velasco Lopez,* 978 F.3d at 854. Under the Second Circuit's approach, for example, the government must bear the burden of proof in § 1226(a) bond proceedings after detention becomes prolonged, because at that point, the individual's interest becomes greater than the government's interest, and therefore the risk of error should be placed on the party with the less weighty interest. *See Velasco Lopez,* 978 F.3d at 855-56. But here, that reasoning does not apply. Sabirov's detention, he concedes, has not become "prolonged." *See, e.g., Zadvydas,* 533 U.S. at 701 (establishing a six-month "presumptively reasonable period of detention" for noncitizens ordered removed). Additionally, the immigration judge here presided over a nineteen-minute hearing, received evidence, heard argument, and concluded Sabirov *was* a "[f]light [r]isk" with "limited time in the US, etc." (Filing No. 15-3). This Court lacks jurisdiction to review that finding. *See* 8 U.S.C. § 1226(e). The Court therefore cannot say that Sabirov's individual liberty interest outweighs the government's interest in enforcing immigration law and ensuring Sabirov's presence during his removal proceedings—particularly given the immigration judge's conclusion he is a flight risk—at this point.

Thus, in weighing the *Mathews* factors, the Court concludes the current procedures used for detention under § 1226(a) satisfy Sabirov's due process rights. That conclusion is consistent with the Eighth Circuit's suggestion in *Ali* that the current § 1226(a) procedures are constitutional. *See* 770 F. App'x at 301.[5] Sabirov was, after all, given a bond hearing and still has available

---

[5] Even if *Ali*'s apparent endorsement of the current § 1226(a) procedures is dicta (as the First Circuit said in *Hernandez-Lara*), this Court cannot brush it aside. *See, e.g., Wilson v. Zoellner,* 114 F.3d 713, 721 n.4 (8th Cir. 1997) (noting that the Eighth Circuit's "statements in dicta may not be disregarded but are entitled to respectful consideration") (citation modified); *Branch ex rel. Branch v. Coca-Cola Bottling Co. Consol.,* 83 F. Supp. 2d 631, 634-35 (D.S.C. 2000) ("[A]s a general principle, a federal district court is required to give great weight to the pronouncements of

procedural avenues to seek relief. *See id.* Additionally, "[t]he Supreme Court has never indicated the bond hearing process set forth in the statute and accompanying regulations is constitutionally deficient." *Id.*; *see also Miranda,* 34 F.4th at 362 (noting "the Supreme Court has determined that several statutory procedures that presume detention *categorically* do not offend the Constitution.") (emphasis added) (citations omitted). Sabirov has therefore failed to show he is in custody in violation of the Constitution, laws, or treaties of the United States, *see* 28 U.S.C. § 2241(c)(3), and his amended habeas petition will be denied.

Accordingly,

**IT IS ORDERED:**

1.  Petitioner Kutman Sabirov's amended petition for a writ of habeas corpus (Filing No. 19) is denied.
2.  A separate judgment will be entered.

Dated this 10th day of July, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge

---

its Court of Appeals, even though those pronouncements appear by way of dictum.") (citation modified).